# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BIOHAVEN THERAPEUTICS LTD., a British Virgin Islands corporation, and YALE UNIVERSITY, a Connecticut corporation,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>AVILAR THERAPEUTICS, INC., a Delaware corporation, and RA CAPITAL MANAGEMENT GP, LLC, a Delaware corporation,<br><br>　　　　　Defendants.<br>AVILAR THERAPEUTICS, INC., a Delaware corporation, and RA CAPITAL MANAGEMENT GP, LLC, a Delaware corporation,<br><br>　　　　　Counterclaim-Plaintiffs,<br><br>　　v.<br><br>BIOHAVEN THERAPEUTICS LTD., a British Virgin Islands corporation, and YALE UNIVERSITY, a Connecticut corporation,<br><br>　　　　　Counterclaim-Defendants. | C.A. No. 23-328-JLH-CJB |

## **MEMORANDUM ORDER OVERRULING OBJECTIONS**

There are three motions to dismiss pending in this trade secret and breach of contract action. (D.I. 192, 262, 264.) The Court referred the motions to Magistrate Judge Burke. (D.I. 217.) On April 10, 2025, Judge Burke issued a detailed Report and Recommendation regarding the first motion. (D.I. 668 ("April 10 R&R").) And on May 20, 2025, Judge Burke issued another detailed Report and Recommendation regarding the second and third motions. (D.I. 730 ("May 20 R&R").)

Defendants filed a Partial Objection to the April 10 R&R (D.I. 687), and Plaintiffs filed a Response (D.I. 715).  Defendants object only to Judge Burke's recommendation that Defendants' motion to dismiss Plaintiffs' trade secret claims should be denied with respect to Defendants' contention that Plaintiff Biohaven Therapeutics Ltd. ("Biohaven") lacks standing and cannot state a claim under the Defend Trade Secrets Act ("DTSA").

Having reviewed the issue *de novo*, the Court concludes that Plaintiffs' First Amended Complaint (D.I. 164 ("FAC")) alleges sufficient facts to plausibly suggest that Biohaven has standing to proceed under the DTSA.

This Memorandum Order assumes familiarity with the April 10 R&R and the allegations in the FAC.  As relevant here, the FAC alleges that:

- "On January 4, 2021, Biohaven signed an agreement with Yale to develop and commercialize the MODA technology[.]"  (FAC ¶ 14)

- "On January 4, 2021, Biohaven licensed Yale's MODA platform, obtaining all substantial rights in Yale's patents directed to the MODA platform.  Biohaven lawfully possesses the MODA Trade Secrets by virtue of its license agreement with Yale, which is covered by the licensed information and licensed materials provided by Yale to Biohaven."  (*Id.* ¶ 86.)

- "Plaintiffs have spent millions of dollars developing technology based on the MODA Trade Secrets."  (*Id.* ¶ 89.)

- "Unbeknownst to Dr. Spiegel and Yale, after terminating its negotiations with Yale, RA Capital and Avilar continued to use Dr. Spiegel's MODA Trade Secrets to develop their competing extracellular degrader company."  (*Id.* ¶ 8.)

- "Neither Yale, Dr. Spiegel, nor Biohaven expressly or impliedly authorized RA Capital to use the MODA trade secret information in the formation of a company to commercialize ASGPR-binding compounds for extracellular protein degradation." (*Id.* ¶ 77.)

- "Neither Yale, Dr. Spiegel, nor Biohaven expressly or impliedly authorized RA Capital to use the MODA trade secret information to raise $75 million to fund a competing company commercializing products based on Yale's MODA Trade Secrets." (*Id.*)

- "On information and belief, Defendants used and are using the MODA Trade Secrets to unjustly enrich Defendants and enhance the commercial value of Avilar." (*Id.* ¶ 78.)

- "In addition, on information and belief, Defendants improperly used the trade secrets, including extensive data and other materials provided by Dr. Spiegel, to assist or accelerate the research and development of extracellular targeted protein degraders, resulting in millions of dollars of cost savings." (*Id.*)

- "On information and belief, Defendants' misappropriation of the MODA Trade Secrets is ongoing and directly causing harm to Plaintiffs." (*Id.*)

- "The theft of Plaintiffs' MODA Trade Secrets has resulted in Avilar saving costs in the development of competing technology and has increased Avilar's productivity. Defendants are also using Plaintiffs' trade secrets in order to enhance the commercial value of Avilar and unjustly enrich Defendants." (*Id.* ¶ 94.)

- "Plaintiffs have suffered and continue to suffer damages as a result of Defendants' misappropriation, including loss of business value. Furthermore, Defendants have

been unjustly enriched as a result of their misappropriation of Plaintiffs' trade secrets." (*Id.* ¶ 95.)

The allegations in the FAC are sufficient to plausibly allege that Biohaven has statutory and constitutional standing to pursue a claim under the DTSA. The statute provides that "[a]n owner of a trade secret that is misappropriated may bring a civil action under this subsection," 18 U.S.C. § 1836(b)(1), and defines "owner" as "the person or entity in whom or in which rightful legal or equitable title to, or license in, the trade secret is reposed," 18 U.S.C. § 1839(4). The statute therefore plainly provides that an "entity" with "license in" a trade secret is an "owner" and "may bring a civil action." Because the FAC alleges facts showing that Biohaven possesses a license to the trade secrets, the FAC plausibly alleges that Biohaven has standing under the DTSA.[1]

The FAC also properly alleges constitutional standing. To properly allege constitutional standing, a plaintiff "must allege facts demonstrating that he suffered (1) an injury-in-fact; (2) that is fairly traceable to the defendant's challenged conduct; and (3) that is likely to be redressed by a favorable judicial decision." *St. Pierre v. Retrieval-Masters Creditors Bureau, Inc.*, 898 F.3d 351, 356 (3d Cir. 2018) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 590 (1992)). Assuming the truth of the well-pleaded allegations cited above, they plausibly suggest (1) that Biohaven suffered a concrete, economic injury-in-fact in the form of damage to the value of its business; (2) that the injury is fairly traceable to Defendants' alleged misappropriation of trade secrets that Biohaven has rights to; and (3) that the Court can redress those injuries via an award of damages and/or an injunction.

---

[1] In arguing to the contrary, Defendants cite *RoadRunner Recycling, Inc. v. Recycle Track Systems, Inc.*, No. 23-04804, 2024 WL 4876947, at *7 (N.D. Cal. Nov. 23, 2024). That case is not binding on this Court. It is also distinguishable at least for the reason that the court in that case held that the plaintiff could not bring a DTSA claim because the named defendants were the owners of the trade secret in question.

4

Defendants' arguments are unpersuasive. First, Defendants contend (i) that Biohaven has only a non-exclusive license to the trade secrets at issue and (ii) that because actions for patent, copyright, and trademark infringement require an exclusive license as a prerequisite to sue, the Court should interpret the DTSA to require an exclusive license too. (D.I. 687 at 3–9.) But patent, copyright, and trademark infringement are governed by different statutes with different language than the DTSA. For example, the Patent Act confers a statutory cause of action only on the "patentee," which is defined as "the patentee to whom the patent was issued but also the successors in title to the patentee." 35 U.S.C. §§ 281, 100. The Patent Act does not expressly confer standing on licensees. Thus, under the Patent Act, the owner (or effective owner) of a patent or the owner's assignee can sue for patent infringement, but a licensee alone cannot. *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1229 (Fed. Cir. 2019). It is true that the class of who has standing to sue under the Patent Act has been expanded by the courts to include exclusive licensees (when joined as a plaintiff with the patentee). *Id.* at 1229–30. But there is no need to do that with the DTSA, because it expressly confers a statutory cause of action to one who has a "license in" the trade secret in question. 18 U.S.C. §§ 1836(b)(1); 1839(4). And Biohaven plausibly alleges that it is a licensee.

Second, Defendants contend that the FAC does not allege that Defendants misappropriated information from Biohaven, rather than Yale. (*Id.* at 9–11.) Not so. The FAC alleges that Biohaven currently possesses a license to the trade secrets and that Defendants' trade secret misappropriation remains ongoing. (FAC ¶¶ 14, 78, 86, 94–95.) Those allegations are sufficient.

For these reasons, Defendants' Partial Objection to the April 10 R&R (D.I. 687) will be overruled.

No party filed objections to the May 20 R&R pursuant to 72(b)(2) of the Federal Rules of Civil Procedure in the prescribed period, and the Court finds no clear error on the face of the record.

Accordingly, for the reasons above, IT IS HEREBY ORDERED that:

1. Defendants' Partial Objection Under Federal Rule of Civil Procedure 72(b)(2) to the Magistrate Judge's Report and Recommendation (D.I. 687) is OVERRULED.

2. The April 10 R&R (D.I. 668) is ADOPTED.

3. Defendants Avilar Therapeutics, Inc. and RA Capital Management GP, LLC's Motion to Dismiss (D.I. 192) is DENIED.

4. The May 20 R&R (D.I. 730) is ADOPTED.

5. Plaintiff Biohaven Therapeutics Ltd.'s Motion to Dismiss Defendants' Counterclaims (D.I. 262) and Plaintiff Yale University's Motion to Dismiss Defendants' Counterclaims (D.I. 264) (collectively, the "Motions") are GRANTED-IN-PART and DENIED-IN-PART:

    a. As to Counterclaim I, the Motions are DENIED with respect to the request for a declaratory judgment that Avilar did not breach the CDA and GRANTED in all other respects. Counterclaim I is DISMISSED WITH PREJUDICE except with respect to the request for a declaratory judgment that Avilar did not breach the CDA.

    b. As to Counterclaim II, the Motions are GRANTED. Counterclaim II is DISMISSED WITHOUT PREJUDICE.

    c. As to Counterclaims III and IV, the Motions are GRANTED. Counterclaims III and IV are DISMISED WITH PREJUDICE to the extent

      that the claims are premised on the Product Market and DISMISSED WITH PREJUDICE to the extent that the claims are premised on the Development Market.

d. As to Counterclaims V and VII, the Motions are GRANTED. Counterclaims V and VII are DISMISSED WITH PREJUDICE.

e. As to Counterclaim VI, the Motions are GRANTED-IN-PART to the extent that the claim is premised upon the filing of this litigation and DENIED-IN-PART to the extent that it is premised on the Press Release. Counterclaim VI is DISMISSED WITH PREJUDICE to the extent that the claim is premised upon the filing of this litigation.

f. As to Counterclaim VIII, the Motions are DENIED.

Dated: September 15, 2025

                                                                  The Honorable Jennifer L. Hall
UNITED STATES DISTRICT JUDGE