## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BIOHAVEN THERAPEUTICS LTD., a British Virgin Islands corporation, and YALE UNIVERSITY, a Connecticut corporation,<br><br>Plaintiffs,<br><br>v.<br><br>AVILAR THERAPEUTICS, INC., a Delaware corporation, and RA CAPITAL MANAGEMENT GP, LLC, a Delaware corporation,<br><br>Defendants. | C.A. No. 23-328-JLH-CJB<br><br>██████████ |
| AVILAR THERAPEUTICS, INC., a Delaware corporation, and RA CAPITAL MANAGEMENT GP, LLC, a Delaware corporation,<br><br>Counterclaim-Plaintiffs,<br><br>v.<br><br>BIOHAVEN THERAPEUTICS LTD., a British Virgin Islands corporation, and YALE UNIVERSITY, a Connecticut corporation,<br><br>Counterclaim-Defendants. | |

## MEMORANDUM ORDER

This is a trade secret and breach of contract case.  Pending before the Court is Defendants' Motion for Summary Judgment No. 2 and Motion to Exclude Expert Testimony No. 2 (D.I. 741), which asks for (i) partial summary judgment that three of Plaintiffs' alleged trade secrets are not actionable under the trade secret laws and (ii) to exclude certain opinions of Plaintiffs' expert, Dr. Strieter.  The Court will deny summary judgment to Defendants with respect to two of the secrets and grant summary judgment on the third.  The portion of the motion requesting to exclude Dr. Strieter's opinions remains under advisement.

## I.      BACKGROUND

The hard facts that are material to resolving the summary judgment motion are undisputed. The Court provides the following only to frame the issues and provide context.[1]

David Spiegel, M.D., Ph.D., is a Professor at Plaintiff Yale University ("Yale").  At a 2018 event called the "Yale Lifesciences Pitchfest," Dr. Spiegel gave a pitch presentation called "MODA Pharmaceuticals[,] Targeted Elimination of Pathogenic Extracellular Proteins."  (D.I. 749, Ex. 23 (Yale Pitchfest presentation).)  As the name suggests, the presentation concerned a technology to treat diseases that involve pathogenic extracellular proteins.  Dr. Spiegel called his technology "the MODA Platform."  The presentation explained the basic idea behind Dr. Spiegel's approach, which was to develop drugs designed to bind pathogenic extracellular protein molecules and cause those protein molecules to be removed from the body.  The presentation touted the "customizable" nature of the approach — that it could be adapted to treat different diseases by targeting the type of pathogenic extracellular protein present in that disease.  The pitch presentation

---

[1] The Court acknowledges that the terminology used in this section is not invariably precise; it is adopted for convenience and readability rather than technical exactitude.

did not contain precise details about how the technology worked, but it did contain some experimental data suggesting that it did work. *Id.*

Representatives of Defendant RA Capital Management GP, LLC ("RA Capital") attended Dr. Spiegel's pitch presentation. (D.I. 750, Ex. 10 at 33.) RA Capital is an investment firm in the healthcare and life sciences industry. RA Capital was intrigued by Dr. Spiegel's presentation and reached out to him to discuss the technology and the possibility of investment. Representatives of RA Capital and Dr. Spiegel met on April 9, 2019. (D.I. 781, Ex. 1 at 46–47.) That day and the next, Dr. Spiegel disclosed certain information to RA Capital, including, among other things, that there were "[p]rovisional IP filings on both [the MODA] platform and individual products."[2] (D.I. 749, Ex. 27 at 12.)

On April 12, 2019, Yale and RA Capital executed a "Confidential Disclosure Agreement" ("CDA"), effective April 10, 2019, "for the sole purpose of evaluating a possible contractual arrangement between the parties." (D.I. 749, Ex. 29 ¶ 2.) The CDA generally provided that RA Capital was to keep confidential designated information provided by Yale and that RA Capital would not use the information for any purpose other than evaluating whether to enter an agreement with Yale. (*Id.* ¶¶ 1–4.) But the CDA did not require RA Capital to pursue any agreement with Yale. Rather, Yale "acknowledge[d] and agree[d]" that

> (a) [RA Capital] is an investment manager, and on behalf of its clients, interacts with and invests in numerous public and private companies including those which may be deemed competitive with

---

[2] A provisional patent application is a temporary placeholder filed with the U.S. Patent and Trademark Office. 35 U.S.C. § 111(b). It secures an early "priority date." To obtain a regular non-provisional patent, a patent application must be filed within 12 months of the provisional filing. § 111(b)(5). Provisional and non-provisional patent applications are not published when they are filed. 35 U.S.C. § 122(a). But once a non-provisional patent application is filed, both the provisional and the non-provisional are made public 18 months after the priority date. § 122(b)(1)(a).

the business of YALE (as currently conducted or as currently proposed to be conducted) (collectively, "Other Companies") and (b) other than as expressly set forth in this Agreement, including the non-disclosure of Confidential Information to Other Companies, [RA Capital] does not have, nor owe, any duty or obligation to YALE.

(*Id.* ¶ 8.) The CDA specified how information was to be designated as "Confidential Information": "The disclosure of the Confidential Information shall be in writing and clearly marked 'CONFIDENTIAL,' or if orally disclosed shall be reduced to writing by YALE within thirty (30) days of its disclosure." (*Id.* ¶¶ 1, 3.)

Yale, through Dr. Spiegel, then shared more information with RA Capital. Some information was disclosed via email and other information via a "Dropbox" folder created to share documents. (D.I. 749, Ex. 31; D.I. 781, Ex. 12.) Some of the documents shared with RA Capital were marked confidential in accordance with the CDA, but not all of them. On April 22, 2019, Dr. Spiegel shared a PowerPoint presentation—the "MODA Deck"—with RA Capital. (D.I. 750, Ex. 7; Ex. 10 at 50–51.) The MODA Deck was a more detailed version of the presentation Dr. Spiegel gave at the Yale Pitchfest event. It was marked "HIGHLY CONFIDENTIAL." And on April 29, 2019, Dr. Spiegel uploaded to the Dropbox folder and emailed RA Capital a

████████████████████████████████████████████

████████████████████████████████████████████

████████ (D.I. 750, Ex. 52; D.I. 769 ¶ 23; D.I. 771, Ex. 1 (Streiter Opening Report) ¶ 133.) It was marked "Yale Confidential." (*Id.* (all citations).)

On May 13, 2019, Dr. Spiegel uploaded drafts of patent applications and accompanying figures to the "RA Capital" Dropbox folder. (D.I. 749, Ex. 31; *see also* Exs. 32–50; Ex 8 at 47.)

4

None of the documents uploaded to the Dropbox folder on that date contained confidentiality markings, nor was the Dropbox folder labeled confidential.[3] (*Id.* (all citations).)

Yale and RA Capital ceased negotiations in August 2019 and did not enter into a further agreement. (D.I. 771, Ex. 73.) The patent applications that Dr. Spiegel had shared with RA Capital in May 2019 were published by the U.S. Patent and Trademark Office on October 17, 2019.[4] (D.I. 749, Ex. 51; D.I. 750, Ex. 19.)

In 2021, Yale entered an agreement with Plaintiff Biohaven Therapeutics Ltd. ("Biohaven") to develop and commercialize Dr. Spiegel's MODA technology. (D.I. 164 ("First Amended Complaint") ¶ 14.) At some point, Plaintiffs discovered that RA Capital and another company, Defendant Avilar Therapeutics, Inc. ("Avilar"), were attempting to commercialize what Dr. Spiegel believed to be his technology. (*Id.* ¶¶ 10–12, Ex. 3.) This lawsuit followed.

Plaintiffs Yale and Biohaven allege that Defendants Avilar and RA Capital committed trade secret misappropriation (under federal and state law) and breached the CDA. Under the

---

[3] (*See also* D.I. 771, Ex. 51 (Milgrim Report) ¶ 79 (noting "Dr. Spiegel's failure to explicitly mark the . . . patent applications as 'confidential.'"); D.I. 749, Ex. 16 (Strieter Reply Report) ¶ 15 (not disputing that the applications were unmarked).)

[4] To be sure, the parties dispute why the negotiations ceased, but those factual disputes are not material to resolving this motion. One view of the evidence is that RA Capital realized during the course of due diligence that (i) Dr. Spiegel was unlikely to obtain a valuable patent and (ii) the data described in Dr. Spiegel's patent applications would eventually be published and was therefore not subject to trade secret protection, such that (iii) RA Capital could form its own competing company without doing a deal with Spiegel. Indeed, Defendants' position is that Dr. Spiegel did not invent the MODA Platform but merely lifted it from other published work. (D.I. 771, Ex. 24 at 325–26 ("I mean, I think as I've said, I don't know how many times in the course of this, David Spiegel did not disclose anything that was his, because . . . he had nothing. He appropriated other people's work and claimed that it was his."); Expert Report of M.G. Finn, Ph.D. ¶ 2 ("Avilar's path, like Dr. Spiegel's, was based on my work with Pfizer to develop novel ligands for the asialoglycoprotein receptor (ASGPR) that might be used in modular form, with the eventual goal of making oral drugs.") (Excerpts of the Finn Report are located at D.I. 750, Ex. 31. The parties did not file the entire Finn Report on the docket but provided the Court with the full version upon the Court's order. D.I. 853, 854.))

Court's scheduling and case management orders, Plaintiffs were required during the course of discovery to identify a list of the trade secrets they believe were misappropriated by Defendants. *Cf. Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 906 (3d Cir. 2021); *SmithKline Beecham Pharms. Co. v. Merck & Co., Inc.*, 766 A.2d 442, 447 (Del. 2000). The operative "Trade Secret Identification Chart" is set forth at Exhibit 2 to D.I. 749 ("TSID"). (*See* D.I. 624 (defining "including" in the TSID to mean "more specifically").) It lists nine purported trade secrets (referred to as TS1, TS2, etc.) along with the "key exhibits" disclosed to RA Capital that describe those secrets. (D.I. 749, Ex. 2.)

In a separately-issued Memorandum Order, this Court concluded that the undisputed facts showed that Dr. Spiegel shared his patent applications with RA Capital in May 2019 under no obligation of confidentiality. (D.I. 955 at 11.) Because Plaintiffs agreed that those patent applications described Plaintiffs' alleged Trade Secrets #1–6, the Court granted summary judgment that Defendants' alleged use of Trade Secrets #1–6 was not trade secret misappropriation. (*Id.* at 11–12.)

In Defendants' Motion for Summary Judgment No. 2 (D.I. 740), Defendants contend that alleged Trade Secrets #7–9 were not secret and that use of that information by Defendants is not redressable under the trade secret laws. The Court presided over two full days of oral argument on October 27 & 28, 2025. (D.I. 884, Exs. A, B ("Tr.").)

## II.   LEGAL STANDARDS

### A.   Summary Judgment

A party may move for summary judgment under Federal Rule of Civil Procedure 56. Summary judgment must be granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the

movant to demonstrate the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986).

"An assertion that a fact cannot be—or, alternatively, is—genuinely disputed must be supported either by 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials,' or by 'showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.'" *Resop v. Deallie*, No. 15-626-LPS, 2017 WL 3586863, at *1 (D. Del. Aug. 18, 2017) (quoting Fed. R. Civ. P. 56(c)(1)(A) & (B)). The Court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). But a factual dispute is only genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To withstand a motion for summary judgment, the non-moving party "must point to concrete evidence in the record that supports each and every essential element of his case." *Nitkin v. Main Line Health*, 67 F.4th 565, 571 (3d Cir. 2023) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."). "[W]here a non-moving party fails sufficiently to establish the existence of an essential element of its case on which it bears the burden of proof at trial, there is not a genuine dispute with respect to a material fact and thus the moving party is

7

entitled to judgment as a matter of law." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014) (citing *Lauren W. v. DeFlaminis*, 480 F.3d 259, 266 (3d Cir. 2007)).

### B.  Trade Secret Misappropriation

The elements of trade secret misappropriation under the federal Defend Trade Secrets Act are (1) the existence of a trade secret, defined generally as information with independent economic value that the owner has taken reasonable measures to keep secret; (2) that is related to a product or service used in, or intended for use in, interstate or foreign commerce; and (3) the misappropriation of that trade secret, defined broadly as the knowing improper acquisition, or use or disclosure of the secret. *Oakwood*, 999 F.3d at 905 (citing 18 U.S.C. § 1839).

Information does not qualify as a trade secret if it is "readily ascertainable through proper means by[] another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3)(B). "[R]everse engineering, independent derivation, or any other lawful means of acquisition" does not count as misappropriation. *Id.* § 1839(6)(B).

Delaware has adopted the Uniform Trade Secret Act. 6 Del. C. § 2001 (the "DUTSA"). Like the DTSA, a Plaintiff bringing a DUTSA claim must establish the existence of a trade secret and its misappropriation. *Beard Rsch., Inc. v. Kates*, 8 A.3d 573, 589 (Del. Ch. 2010).

### III.  DISCUSSION

Defendants' second motion for summary judgment seeks summary judgment in Defendants' favor on Plaintiffs' trade secret claims insofar as they are based on alleged Trade Secrets #7–9 ("TS7," "TS8," and "TS9"). The parties do not make any separate arguments with respect to Plaintiffs' claims for misappropriation under the federal DTSA versus Plaintiffs' claims for misappropriation under the DUTSA. The Court assumes, like the parties, that the state and federal misappropriation claims rise or fall together.

8

### A.    TS7 AND TS8

The TSID defines TS7 as follows:



(TSID.)  The TSID says that TS7 is disclosed by the MODA Deck that Dr. Spiegel shared with

RA Capital, "including at slides 16–20, 23."  (*Id.*; D.I. 750, Ex. 7 ("MODA Deck").)

The TSID defines TS8 as follows:



(TSID.).  The TSID says that TS8 is disclosed by the MODA Deck that Dr. Spiegel shared with

RA Capital, "including at slides 16–25."

---

[5] Here the TSID contains a further footnote providing that "███████████████████████████
███████████████████████████████████████████████████████████████████████████████████████."
(TSID, TS8 n.5.)

Defendants say that there is no genuine dispute of material fact that the purported trade secrets described by TS7 and TS8 were either publicly disclosed or readily ascertainable. As an initial matter, the undisputed facts show that some of the information disclosed in slides 16–25 of the MODA Deck is also described in Dr. Spiegel's pending patent applications, which the Court has already held were shared under no obligation of confidentiality.

Defendants point out that slides 16 and 17 of the MODA Deck have ███████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████ and that Dr. Spiegel's non-confidential patent applications nevertheless revealed that he was working on the ████████████ in those slides. According to Defendants, to the extent the remainder of the slides suggest paths for future research, such paths would be readily ascertainable by anyone experienced in the industry with access to the data in Dr. Spiegel's non-confidential patent applications.

Defendants make a persuasive argument. But the Court must view the evidence of record in the light most favorable to Plaintiffs. The Court may be skeptical that the ████████████ had any significant value as a trade secret (or that Defendants made use of them), but the Court cannot say on this record that they weren't secret at the time they were shared. And while a reasonable factfinder might very well conclude that a scientist confronted with the disclosures in the patent applications could derive the same "roadmaps" for future work that Dr. Spiegel disclosed on the remainder of the slides, whether those paths forward were "readily ascertainable" is a fact question not amenable to summary judgment on the record before the Court.

**B.** **TS9**

The TSID defines TS9 as follows:



(TSID.)  The TSID says that TS9 is disclosed by the MODA Deck and the ███████████ spreadsheet that Dr. Spiegel shared with RA Capital.  (D.I. 749, Ex. 2; TSID, Ex. A, B; D.I. 750, Ex. 52.)

Defendants argue that the ███████████████████████████████████ were publicly disclosed and/or readily ascertainable.  There is no factual dispute that many of the ███████████ on the list were disclosed under no obligation of confidentiality.  For example, one of Dr. Spiegel's non-confidential patent applications contained a list of ███████████ and ███████ that might benefit from the MODA technology.  (D.I. 750, Ex. 19 at 19631–38.)  Dr. Spiegel's patent applications also disclosed data for certain ██████ he had pursued with his MODA approach, thereby disclosing the fact that he was pursuing them.  In addition, a non-confidential MODA Pharmaceuticals slide deck created by Dr. Spiegel and sent to RA Capital from third-party Bain Capital disclosed further ██████ and data.  (D.I. 750, Ex. 17 at 10–15.)

The ███████████████████████████████ that had not previously been compiled and published or otherwise disclosed together in list format.  But Dr. Spiegel did not discover that those additional listed ██████ involve pathogenic extracellular proteins.  Rather, he looked at the published literature and compiled a list of the ones that did.

11

(D.I. 750, Ex. 25 ¶ 135 (Plaintiffs' expert Dr. Strieter conceding that "███████████████ were themselves known" and that "██████████████████ were disclosed in the Yale Patent Applications"); Rebuttal Expert Report of Glenn Prestwich, Ph.D. ¶¶ 694–701 (explaining that the ████████████████████████ was "assembled entirely from public sources.").) [6]

Nevertheless, even assuming for purposes of the argument that the compilation set forth in the ██████████████ did contain a protectable trade secret, Plaintiffs have not offered any separate theory of harm for Defendants' alleged "use" of that list.  Plaintiffs claim damages based on Defendants' pursuit of ██████████████, but those were disclosed by Dr. Spiegel as potential ████ in either the non-confidential patent applications or the Bain Capital deck.  (D.I. 750, Ex. 19 at Fig. 89; Ex. 17 at 10.)  It's true that the concept of "use" under the trade secret laws includes "a broad range of activity that is rightly seen as unauthorized use of a trade secret."  *Oakwood*, 999 F.3d at 910.  But, here, Defendants haven't made use of the actual list in a way that had any value from the fact that it was secret.  Rather, Defendants pursued ████████████████████████—under no obligation of confidentiality—might be pursued.  *See DeWolff, Boberg & Assocs. Inc. v. Pethick*, 133 F.4th 448, 453 (5th Cir. 2025).  Defendants' motion is granted as to TS9.

## IV.    CONCLUSION

As explained above, Defendants are entitled to summary judgment on Plaintiffs' trade secret misappropriation claims insofar as they are based on alleged Trade Secret #9, but there are disputes of material fact as to alleged Trade Secrets #7 and #8.

---

[6] Excerpts of the Prestwich Rebuttal Report are located at D.I. 750, Ex. 13.  The parties did not file the entire Prestwich Rebuttal Report on the docket but provided the Court with the full version upon the Court's order.  D.I. 853, 854.

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment No. 2 (D.I. 741) is GRANTED-IN-PART with respect to alleged Trade Secret #9 and DENIED-IN-PART with respect to alleged Trade Secrets #7 and #8.

The parties filed their briefs under seal. Accordingly, I'm issuing this Memorandum Order under seal in the unlikely event that it discusses any evidence that should be under seal. To the extent that either side seeks to have any portion of this Memorandum Order redacted, the parties shall jointly submit a proposed redacted version no later than July 6, 2026, for review by the undersigned, along with a motion supported by a declaration that includes a detailed explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious injury to the party seeking closure." *See In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (quoting *Miller v. Ind. Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994) (internal quotation marks omitted)). The Court intends to issue a public version of this Memorandum Opinion no later than July 9, 2026.

Date: July 1, 2026

The Honorable Jennifer L. Hall
UNITED STATES DISTRICT JUDGE

13